Good morning, counsel. May it please the court, my name is Charles Mullins. I will argue today for the United States of America. I'm joined at the table by Christine King and Joanne Holley, who are attorneys with the Customs and Border Protection Office in Long Beach. I would like to reserve five minutes of my time for rebuttal. My plan this morning, unless the court wishes to choose otherwise, is to start with a short introduction and then discuss briefly the language of the statutes at issue, because this is a case of statutory interpretation, the sequence of congressional action enacting the statutes in this case, and the underlying congressional intent here. 1999, Customs seized a shipment of watches destined for Able Time because the trademark on the watches was identical to one registered for Tommy Hilfiger. We have included pictures of the watches in the excerpts of record, I believe, starting at R23. In 2004, Customs issued a civil penalty under provisions of the Tariff Act. The case went to trial. The district judge issued summary judgment for Able Time. The district judge held as a matter of law that the Tariff Act definition of counterfeit did not apply if the owner of the trademark did not make the same merchandise at issue in the case, because Tommy Hilfiger at the time did not make watches. The court ruled that the watches were not counterfeit watches. The court did not address the question of whether or not the mark on the watches was a counterfeit watch. So even if you prevail on the statutory construction, you know, if we agree with your statutory construction, it still would be necessary to remand because there are issues that the court has not determined? We would argue that it's not necessary to remand, Your Honor. The court, for example, in Montrose-Rolex, which is one of the cases that both sides cite in this case, the court of appeals, the Second Circuit, reviewed the marks at issue and ruled that the marks were counterfeit. So this court has the ability to look at the record, to look at the marks in the pictures, to look at, compare them to the marks. We've included the trademark registration certificates in the appendix of our brief. So you not only want you, if we accept your statutory construction, then what you're saying is that even though the district court didn't rule in the first instance that you want this court to conclude that the counterfeit mark is identical to or substantially indistinguishable from the registered mark and find summary judgment in your favor? Yes, Your Honor. We would like that. Obviously, you have the power to remand the case if you feel that the case needs to be remanded. But we do believe that you also have the power and the authority to rule as the court did in Montrose-Rolex. All right. I'm sorry. Go ahead with your statutory construction. Okay. Able Time in its brief concedes that the statutes do not have what we've referred to in the brief as a requirement for similar goods and services. We note on our reply brief at page 7 at least three instances in Able Time's brief where they recognize that the in essence what you have here is they're asking this court to amend the statute by judicial fiat. In the clear language of the statute, this court has held that you must have some clearly expressed legislative intent so that the words of the statute can be overruled by a court. They haven't shown that to date. Or they are arguing that 15 U.S.C. 1127, which is the definition of counterfeit referenced in the Tariff Act, somehow is repealed by implication. The Supreme Court has held that you have to have an irreconcilable conflict for a repeal by implication. There's been no showing of an irreconcilable conflict. Well, your argument as I understand it basically is the language is plain and so forth. That should resolve it. But even that being the case, the canon of construction that says that Congress knows how to say it when they want to say it. That's correct. And they've said it in some spots and they haven't said it in other spots. That's correct. Congress, there's a case law points out that if Congress says two different things in related statutes, they intend two different things in the different circumstances. In this case, the statute involved is the Tariff Act. 19 U.S.C. 1526 talks about a mark. Doesn't talk about counterfeit goods. There's no requirement for similar goods and services. Same thing is true in 15 U.S.C. 1127. Let me pause there if I could because one of the things that I've had trouble getting a handle on is how broad does this run? I mean, we have a mark, Tommy. It is not registered for the field or the classification that would include watches. Correct. It's registered for perfumes, colognes, and the like. The name Tommy can pop up in lots of circumstances. Is it limitless? I mean, can somebody? No. Where's the limit? There's a limit. And Customs, in fact, Able Time has submitted in their brief or in their excerpts, they submitted a ruling that Customs gave in an inquiry, which importers can do to find out whether or not your product violates a mark. In the Waterford case, people were getting ready to import a wine named Waterford. They wrote in and asked Customs, will this infringe on the Waterford crystal mark? Can we do this? Will we be found to have a counterfeit mark? And Customs gave them, in response, gave a statement in which Customs notes that you have an identical mark, but there was no likelihood of confusion. And what Customs does, and it's set out in a Customs Service Bulletin, is that if, first you look at the mark. Is the mark identical? Is it identical to or substantially indistinguishable from? If it is not, you go on. If it is identical, and it is not in the same class, then you look at, there's sort of a two-axis approach. You look at the strength of the mark, how well-known it is. And then you look at whether or not the goods are what's called related goods. The definition is, are they likely to appear in the same channels of commerce? In other words, as the mark gets stronger, the channels of commerce obviously would get a little broader. As the mark is weaker, the related goods becomes narrower. In other words, you do Who adjudicates that? I mean, in the first instance, Customs, but what happens after that? Right. You have an internal appeal process within Customs. In other words, you will have an initial determination by Customs inspectors or local Customs office. Then you have an internal appeal process. That's not self-executed. If Customs ultimately rules against the importer, Customs still has to, on its own initiative, go into federal court, filing an action for forfeiture and or civil fines. So that would be relevant in this particular action? That's correct. In this particular action, Customs issued, there was, as he's pointed out in our brief, there was a forfeiture case which was dismissed on service of process issues. But in this case, the civil penalty case, Customs issued a civil penalty, able time, for some, did not, chose not to use the internal appeals process, which could have resulted in a reduction of the civil penalty. Customs then filed the action for civil penalty enforcement in federal court, which, of course, is an independent action and judicial review by the judge, which is then reviewed on appeal by district court. That's the process that's involved. Well, I may have misunderstood before, but when Judge Callahan was asking about the possibility of remand, and you suggested that wasn't necessary, has the issue we've just discussed been adjudicated as of yet? I mean, there has not been a determination that I'm aware of by the district court. That's correct. In other words, the court below did not reach the merits of whether or not this mark was a counterfeit mark. So it seems to me remand has to be the result if you would prevail, because there has been no adjudication of the issues that would be on the table in this case. Certainly one option for you. On the other hand, it is also, the mantra is Rolex court. The judges took the marks, compared the marks with, in that case, you had similar products. Well, in this case we have the word Tommy. Well, yeah, it's a little harder with Tommy, and you don't have the little crown like, okay, got a Rolex watch. It's a little easier to do that than when they don't make, Tommy doesn't make watches, and it just says Tommy. Because I almost kind of said Tommy Bahama here, which I guess isn't, that's not right. No, but if you look at the registration certificate, which we have in the back of our brief, what is registered is the block word Tommy, T-O-M-M-Y. Well, Tommy is sort of generic. I mean, it's a name. I don't mean generic in the intellectual property sense, but it's not, we're not talking Rolex with a crown. We're talking Tommy, and I can't say that the first thing that sprang to my mind when I looked at the picture outside the context of this case is exactly who it was they were trying to, so it may not be quite so self-evident, and my line is really prompted by a misunderstanding, I think, of your early answer. You acknowledge those issues are properly on the table before the district court, but the district court hasn't adjudicated them. That's correct. I'm not arguing that. And you also acknowledge that this likelihood of confusion is a necessary element to reach the, to impose a civil penalty. And that evidence on that was presented below. In other words, there were several motions for summary judgment which set for, I believe, over a year before the judge went back and then ruled on this. Let me ask you to change gears a little bit, because you did describe properly the effort to go forward with forfeiture, which fizzled out because of the service of process problem. I have a little concern, as I look at the statute, it is correct the statute just requires seizure. Correct. But it can't be simply the act of seizure, because suppose property was improperly seized and then, oops, well, we give it back, but we've seized, so we can go collect a civil penalty. No. You still have to have a merits adjudication. Okay. In other words, the process contemplates them. In other words, normally the process would be you do the forfeiture action first, as we point out in our brief. The normal process is you go through a forfeiture action. And at that point, there's a merits determination. If the merits determination is in the favor of the importer, of course, obviously, there's no civil penalty. If they're in, the property is returned. If the property is forfeited, then you've got a merits determination of counterfeit, which is also race adjudicata in a civil penalty proceeding. But the statute does contemplate. In other words, in this case, we're still looking. In other words, it would require a merits determination, either by this panel or by the district judge, that there is a counterfeit mark. No question about that. And because there was no such adjudication in a forfeiture action, it would remain for this action to accomplish that. That's correct. That has to be done. We're not arguing to the contrary. Our friends seem to argue that the enactment by Congress in 1984 of a comprehensive statute on trademarks somehow amended the Tariff Act. In 1984, Congress enacted two statutes as part of an omnibus legislation. They enacted the criminal statute, 18 U.S.C. 2320. And they amended a portion of the Lanham Act, the injunctive portion, in 15 U.S.C. 1116. At that point, and if you will look at the definition, in 15 U.S.C. 1116d, they enacted a new definition of counterfeit. And they started out by saying, as used in this subsection, the term counterfeit mark means. They enacted a special definition, which does include a requirement for similar goods and services. But they did not change the Tariff Act, 19 U.S.C. 1526. They did not change the definitional section in the Lanham Act, 15 U.S.C. 1127, when they did that. They did not change, again, in 1996, when they enacted the civil penalty provision, they did not change either of the sections. And they did not change anything in 2006 when they amended the criminal statute. The purpose of Congress behind the Tariff Act is clear. It's to prevent the importation of merchandise with a counterfeit mark. It's to protect the public at the borders. It's different from the Lanham Act, which is a private remedy for aggrieved owners. Under the Tariff Act, customs is charged with trying to protect the integrity of the marketplace. The decision below doesn't do that. The decision below allows an importer in Hong Kong to look at the marketplace, to find a strong mark, which Tommy Hilfiger, most people, I think, would agree is a strong mark, pick a product Tommy Hilfiger doesn't make and put the mark on that product. In fact, the district judge below did not even limit his opinion to class. He didn't say because Tommy makes marks, has its mark only with class four, class five, the Tariff Act can only apply to that class. The district judge actually made it a stronger opinion by saying it has to apply to the same product. So we believe that the district judge opinion below is clearly incorrect. We would ask this Court, back to my sum up time, I'd like to ask this Court to reverse the decision of the district court below. Able Time, in their brief, claims that this appeal is frivolous and taken in bad faith. It is not. Even if this Court respectfully disagrees with our interpretation of the law and rules against us, we think that this case is not frivolous. And we would ask that you would deny their request for attorney's fees. Thank you. Thank you for your argument. And we'll hear from counsel for Able Time. I guess we're turning that off. Good morning. May it please the Court. My name is Elon Pollack. I'm here with my co-counsel, Phyllis Pollack. We represent Appellee Able Time. We think we argue this case is a little bit different than that of the government, obviously. We think that the statutory construction that's involved in this case is the statute 1526F read together with 1526E. And the real question presented is can Customs impose a penalty under 1526F based on 1526E when the goods are not forfeited? Similarly, can Customs impose a penalty under 1526E when the property to be forfeited is restored to the claimant, i.e., it's unseized? There is no seizure. Third, if the property is restored to the claimant, Able Time, is the case now moot? Well, but Customs did have the watches when they instituted this procedure, though. Isn't that correct? Yes. I thought Customs still had some of the watches. I think the U.S. attorney is holding 12 pieces. They've been restored to the ñ there's approximately 300 pieces that are missing. About ñ well, the 300 will return to Able Time right after or right before our reply brief was filed in the third motion for summary judgment. So we have the property. You have some of the property. Most of it, yes. The government still has some. The government still has 12 pieces, plus the missing 280 pieces. So what is it? It says it's entitled to ñ I beg your pardon? It says it's entitled to Chevron deference. What's your answer to that? I think that the clear reading of 1526E makes ñ is clear, and they're not entitled to Chevron deference unless the statute itself is unclear. And in order to impose a penalty under F, you have to satisfy E. At least two courts, including Judge Takasugi, have ruled in that ñ have interpreted the statute that way. In SACAR International v. United States, which was decided after our briefs were filed, 466, 1333, specifically at page 1343, Judge Stanso of the Court of International Trade said as follows. Section 1526E and 1511.24 together establish a general prohibition on the importation of counterfeit merchandise, and both form the predicate for an assessment of civil fines under 1526F. Well, you know, I mean, we're sort of spending a lot of time on this, but the statute itself just says, merchandise bearing a counterfeit mark. That's it. Merchandise bearing a counterfeit mark. I think these watches probably bear a counterfeit mark. And then it says any such merchandise bearing a counterfeit mark shall be seized. Over and out. It doesn't say that the trademark also has to ñ owner of the trademark also has to manufacture watches. Actually, it says ñ If you put a counterfeit mark on something, it's subject to seizure. Actually, the statute says seizure and forfeiture. The provisions are conjunctive. It's mandatory. There has been no forfeiture in this proceeding. The merchandise has been restored to able time. Judge Takasugi, in reaching his decision, basically says that you can't have a penalty under F because you've never satisfied ñ the product is not a counterfeit under E. Otherwise, 1526E is rendered meaningless. I think the essence of this case is, really, can you have a counterfeit where there is no original? And I think that's really the problem here. Counsel overlooks the fact that 1526E directs the court to 1127 for definitions. At every ñ at at least three or four locations in 1127, Congress has said that a trade ñ that a mark attaches to goods and services. In fact, the definition of a spurious mark is one that copies one that is on the principal register, again, for good ñ for that class of goods and services. It's remarkable that the government would read out of the statute that there's a goods and services requirement. I think, as Judge Callahan pointed out, when she saw this case, she thought of Tommy Bahama. There is no exclusivity on the name Tommy. And I think that the parade of horribles that counsel is suggesting just isn't the case. Nobody has an exclusivity. I remember seeing an ad years ago. Louis Vuitton, obviously trying to protect its mark, has ñ and I'm trying to remember if it was like a ñ it was a cap or a hat or something. And the point of the ad was that, gee, Louis Vuitton doesn't make caps with their LVs all over the place, but people are out there selling it. Would you characterize that cap because Louis Vuitton doesn't make caps as being not counterfeit or not a counterfeit mark? What I would do is say that Louis Vuitton does make wearing apparel, for personal knowledge. Don't make caps. And you've told us we need the same product. I beg your pardon? I understand your argument that we need the same product. No, my argument is that it be in the same class of goods and services, not the same product. There is, I think, that you have the goods and services to the extent you're talking about certain classes ñ a class of goods, watch, horological instruments, clocks, chronometers. I think that's your class of goods. Hats are distinguishable, I believe, from wearing apparel and would be different. And I don't know that Louis Vuitton would be entitled to protection except if you go through this likelihood of confusion analysis, which really isn't necessary here because the statute that we need to focus on is 1526F and says its liability is predicated on E. And this really brings us back to the point of once the goods are restored to able time, once there's a ñ Stop. I hear you making two separate arguments. And I want to be able to understand them. Thank you. And now you're moving from what I understand to be the argument with regard to how far the protection can run and as a counterfeit mark, Louis Vuitton mark on a cap not made. And now we're running back to the argument that says if you don't get the forfeiture, you can't have a civil penalty. Now, I hear your argument, but that's not the argument we were just talking about. That doesn't tell me why the L.V. mark on the cap isn't a counterfeit mark. Well, if Louis Vuitton does not have ñ I guess the distinction really is whether it's the government prosecuting the claim or whether it's Louis Vuitton prosecuting a civil claim. And I think that's really the distinction here. Here you're talking about the imposition of a penalty by a government agency arising out of its decision to seize and forfeit goods. Louis Vuitton has its own separate remedy to argue that this is a counterfeit, the hat is a counterfeit, and that there's a strength of their mark that's known worldwide, and they can prosecute their case under a separate statute. And I think that that's really the problem, is that there is a difference here. This is the United States government. I hear your argument as saying that you can't use F unless the object in question has been seized and forfeited, right? That's correct. Well, the problem, having then answered this, under F it doesn't say anything about forfeiture. It says seized under subsection E. Well, that's the whole problem. That's part of the problem that we looked at initially. However, Judge Takasugi concluded that if you don't have a forfeiture, there's no counterfeit under E. And Judge ---- But you concede that nowhere in F does the word forfeiture appear. That's correct, Your Honor. Seized, seized, seized. That's correct, Your Honor. But now we're dealing with ---- These watches were seized. And now they've been returned. I mean, I think the point that Judge Clifton made earlier is that what do you do about an unlawful seizure? What do you do where the property was taken mistakenly? Does that mean you can still go and assess the penalty? But we don't have that adjudication. And we've got an answer. The answer given by the government was what we need to adjudicate the lawfulness of the seizure. And they can still assert they had a lawful seizure because there was a counterfeit mark here. They didn't succeed in the forfeiture because of the service of process problem. But that doesn't speak to the lawfulness of the seizure in the first place. And F only requires seizure. There is no probable cause finding by the district court in this case. And certainly there hasn't been because there was no forfeiture trial. That's correct. But that doesn't preclude the possibility of the court adjudicating it in this action that this was, in fact, a counterfeit mark. I think that still there's a problem here because there is no counterfeit mark, because Tommy Hilfiger did not make goods in any product. Well, now we're running to the other argument. Well, I'm trying to. I think there are two separate issues here. And I understand you've made two separate arguments. But when we challenge you on one, it's not really very persuasive to run to the other one. I mean, is there something else that you have to offer us with regard to the requirement of forfeiture, with F not saying forfeiture, with the seizure having taken place and with the current proceeding being one in which the lawfulness of the seizure can be adjudicated, is there any other reason to say because the goods were not forfeited, the civil remedy is not available, the civil penalty is not available? Yes, and that would be that the case is moot. Because even if this court were to return the case to the district court, there's no effective remedy for the government. They can never go and forfeit the goods under E if forfeiture is a requirement. If forfeiture is a requirement, they can never forfeit these goods. Sure. But my question is what is it that tells us that forfeiture is required? Section E. Well, Section F doesn't say that. What in Section E says that you can't have a civil penalty without forfeiture? I beg your pardon? What in E says that you can't have a civil penalty imposed under F without forfeiture? E is strictly a seizure and forfeiture provision. That's right. F is a penalty provision that's predicated on E. Well, predicated on E, but F only makes reference to the seizure part of E. To the extent that it's ambiguous, Judge Takasugi and Judge Stanso in the Court of International Trade have already come to a different conclusion. And you've cited that. But that's, as you well know, that precedent is not binding on us. We need to have some logic that goes with it. And so what's the logic of saying that forfeiture ought to be required as a requisite for application of F? Well, first of all, because the statute in E says so. And second, the government has other remedies. This is not the only remedy where there's an issue of infringement. This is strictly dealing with counterfeit goods. And it's unfortunate, but there should be a bright line of what is counterfeit under F and what is not counterfeit under F in E. And that customs has options and they have other statutes that they can rely on to impose a penalty and seize goods. This is not the end-all to be-all. We're simply saying is that under this particular provision, they haven't met their burden at all. These goods are not counterfeit. Well, maybe then we should just move that out of their argument, which is the counterfeit issue. And that is, that really goes to the kind of thing we were asking before. Your position, as I understand it, is that either the same product or at least something within the same class of product has to be manufactured or produced or licensed or whatever, but there has to be a real good of within the same classification in order for it to qualify as counterfeit under subsection E. Is that correct? Yes, Your Honor. And the reason I reached that conclusion, and I hope the Court would agree, is that under subsection E, there is a definition of goods and services. And there is a definition of goods and services in Section 15 U.S.C. 1127 for definitions. And each and every definition within that provision talks about marks, names, words, symbols that appear on the principal register for the class of goods described therein. When you look at the definition of trademark, it says the same thing to the extent that a trademark applies to goods and services claimed by the State. The definition of counterfeit. This is a long section, so it's quite possible I'm not looking at the same part of it that you are. But I don't see within the definition of counterfeit something that specifically refers or limits that definition to something within the same class. Well, you have to look at the definition of mark. If it's not defined as a counterfeit mark is not defined in the definition section, then I suppose you have to look at the definition of mark. Well, as I read it, it says a counterfeit is a spurious mark which is identical with or substantially indistinguishable from a registered mark. Correct. It doesn't say anything about classification of registration. But a registered mark is one that appears on the principal register. That's right. But we know in other contexts that that doesn't preclude a party from having rights beyond the specific classification of registration. But with respect to counterfeit goods, it should. And it does. Because if you look at the definition of trademark, it's limited by its terms. It's to identify and distinguish his or her goods, including a unique product from those manufactured or sold by others. That's as clear as you can be. I guess I'm not on the same page, but I guess I'm also not quite so sure. I mean, in this case, Tommy's interest or Tommy Hilfiger's interest is in not being identified or in people falsely inferring that the goods in question should be identified with them. Wouldn't they have that interest whether or not they have registered their mark for that classification or not? I'm sure they would. But the fact is they didn't produce those products and at the time had no intention of producing that product. So what would be the point? Well, does that make it any less? Because there's no exclusivity for the name itself. But does that make the mark any less effectively protected? It is a registered mark. The registered mark was for cosmetics, not for washes. They weren't related products. U.S. Patent – I'm sorry, the Trademark and Trial Appeals Board said in 1963 that washes and cosmetics are dissimilar and they're not likely to cause confusion. That's at 137 U.S. Patent, quarterly 909. When you listen to the discussion here, how can you say this is a frivolous lawsuit? Because in our view, the government lost the forfeiture action. They restored the property to able time. They published an announcement in the Federal Register in July of 2003 stating that if someone is successful in a forfeiture proceeding involving the counterfeit claim, it will not face a penalty claim. That's their stated policy. It appears that the supplemental excerpts of the record, I believe, is at page 112. This is the government's position, yet here we are nine years later facing a penalty proceeding for something that Customs said they wouldn't do. How do you deal with Section 1124? Section 1124 is a bar to importing goods that contain a mark that's owned by an American domestic producer or manufacturer, and that's what happened. The goods were seized. Any goods? Yes. Any goods. That's what happened here, which triggers a seizure and forfeiture proceeding under the Customs regulations. We challenged it and we were successful. I'd like to go back to the issue of mootness. We submit that this case is probably moot. And while we weren't very articulate in the district court, we did have three motions to summary judgment filed. And in the body of the last summary judgment motion, we did point out to the court that the property was restored to Able Time so that, in effect, they were unseized. Because 1526F concerns a seizure, we submit the goods, as they're unseized today, that they've not met, they can never meet the requirements of Section F. In addition, the Customs has changed its regulation concerning the assessment of penalties in that same rulemaking procedure so that the valuation that Customs used in this case, as Customs acknowledged, did not apply. There was no manufacturer-suggested retail price, nor could there be because there never was a real product, according to Customs. So in the absence of an MSRP, there was no fallback value. And it makes sense, because when you're dealing with this particular statute, you're protecting a real product, not a fake, not an imaginary product. So in that respect, there can never be an MSRP on the date that these goods were seized, so that to send this case back to the district court is likely to be futile. The government will never be able to achieve the result it wants. Finally, if the Court were to send the case back, we would ask that the Court not vacate the decision below. We think that Judge Takasugi got it right, that you need to have an original to have a fake. Customs and the public needs a bright-line rule that they can rely on when they're importing. Counsel suggested that an importer can go to the Customs service and get a ruling before it imports a product. I submit that you don't need a ruling if there is no similar product to be concerned about. I think that if you look at the trademark law, that should be sufficient that you have a product that's non-competing, and it's not even the same name. I think I may have missed something. You said if we think it's necessary to send the case back, you ask us not to vacate what the district court ruled. Aren't those kind of squarely inconsistent with each other? If we send it back, it's because we didn't agree with what the district court ruled. Well, if you send it back for a hearing on whether they can impose a penalty under F where there's no forfeiture, you still have the problem for the court to look at whether there's a counterfeit and whether there is an MSRP for the product. I think that the government will never be able to satisfy that requirement. The customs so that to send it back would be, in our opinion, be futile. But with respect to not vacating the decision below, if you were to dismiss the case as moot, we think it's important that there be a bright-line rule. And I think that Judge Takasugi's decision is consistent with Monterey-Rolex in the Second Circuit. I think counsel misapplied Monterey-Rolex because Monterey-Rolex says you compare the actual articles to the fake articles in order to make a determination. And the reason why the court could look at the registration is because it said Rolex made the product. It wasn't an imaginary product. So it's consistent with what happened here. We think that the Ninth Circuit should follow the same rule. Are there any questions? Thank you, Your Honor. Thank you. Rebuttals? I'll try to be very brief. Two things. The question of the amount of the civil penalty was addressed in our reply brief. The customs assessed a penalty based on the wholesale value of the watches as calculated. We just demonstrated the calculations. The statute says that the penalty shall be an amount up to the MSRP. It doesn't say that it has to equal the MSRP. Customs provided the calculation. We provided the calculation and explanation of that in our brief. Counsel refers to Monterey-Rolex. Monterey-Rolex said that if you have items on which there are marks, then it's better to compare them if you can. But the court explicitly stated that customs could compare the imported items, the mark on the imported items, to the mark on the recordation. If this court has no further questions. It appears not. On what are you entitled to Chevron deference? Judge Trott, we believe that we're, in other words, obviously we believe that the plain language of the statute is clear. But our argument on Chevron is if there is an ambiguity, in other words, the statute in 1526 says mark a merchandise, as you point out, merchandise with a counterfeit mark. As Judge Clifton pointed out, counterfeit is defined as a spurious mark. It's not linked to a product. Only in the injunction provisions of the Lanham Act, which is a private remedy, if Tommy Hilfiger, for example, decided to file an action against Abel Tye, Tommy Hilfiger would have to show that it had made a similar product. And I would point out for the Court's interest that within six months of the seizure, Tommy Hilfiger was selling watches and applied for a recordation or registration of its mark for watches. Did that answer your question, Judge Trott? Close enough. Thank you. I thank the Court. Always a pleasure to appear before you. Thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes our calendar for the day and the week. We are adjourned.
judges: Trott, Clifton, Callahan